J. Irwin Shapiro, J.
This is an action in negligence against the Savings & Loan Association of Sunnyside to recover damages for personal injuries sustained by the female plaintiff and for loss of services and medical expenses sustained by her husband. Harold Haller, doing business under the firm name and style of Uneeda Floor Waxing Company, was impleaded as a third-party defendant pursuant to the provisions of section 193-a of the Civil Practice Act on the theory that he was the active wrongdoer responsible for the accident. The jury rendered verdicts against the defendant in favor of the female plaintiff for $2,100 and in favor of her husband for $500, and the defendant’s motion to set them aside was denied immediately after they were rendered and the jury polled. The court did not submit the issues presented by the third-party complaint to the jury, but reserved the disposition thereof to itself.
It is the contention of the third-party defendant that no judgment over may be granted against him in favor of the defendant, on the ground that the latter was guilty of active negligence and must be regarded as a joint tort-feasor in pari delicto. (Kile v. Riefler Bros. Contrs., 282 App. Div. 1000.)
The plaintiff testified that while a patron at the defendant’s premises on January 28, 1954, between the hours of 12:30 and 1:00 p.m., she fell because of an accumulation of wax on the floor of the public area, thereby sustaining the injuries complained of. The third-party def endant, an independent contractor, completed waxing the floor in the defendant’s premises at about 5:00 p.m. of January 25, 1954. The defendant’s employees testified that its premises were cleaned daily, but at no time was the floor waxed by them, the third-party defendant performing that work exclusively. It was testified, on behalf of the third-party defendant, that there was no accumulation of wax on the floor of the defendant’s premises and that, as a matter of fact, an inspection thereof when the waxing of the floor was completed, three days prior to the accident, disclosed no such accumulation.
A sharp issue of fact was thus presented to the jury as to whether the floor was waxed in such a fashion that it became dangérous and slippery for persons using it in the ordinary course. In my charge I told the jury “that if the accident *722 happened for any other reason than the waxed condition of the floor, as testified to by the plaintiff; in other words, if it happened by reason of any other condition but an alleged over-waxing of the floor, by reason of any other condition except the floor being made slippery by reason of the waxing, then the plaintiff may not recover. * * * The only basis upon which you can find in her favor in this case, and she must stand or fall on that because that is her claim, that she tripped upon wax; that the floor was over-waxed; that the floor had been made slippery and that when she fell she saw the groove made by the over-waxing of the floor and that, as a matter of fact, some of it was left on her shoe.”
By its verdict in favor of the plaintiffs the jury, ‘ ‘ constitutionally endowed with the right to pass on conflicting evidence, as well as the credibility of witnesses ” (Swensson v. New York Albany Desp. Co., 309 N. Y. 497, 505), has stated that it believed the plaintiffs’ version of the accident and its proximate cause. (See Kelly v. Watson Elevator Co., 309 N. Y. 49, 51.)
Since the evidence in this case establishes that it was the third-party defendant who exclusively performed the waxing for the defendant bank, and that at no time was the floor waxed by any of the latter’s employees the court is of the opinion that the defendant is entitled to indemnity from the waxing company, for it was the latter who created the condition upon the basis of which the jury found the defendant liable to the plaintiffs, the bank’s role having been only a passive one. (Baccale v. City of New York, 1 A D 2d 1018, affd. 2 N Y 2d 951; Runkel v. Homelsky, 286 App. Div. 1101, affd. 3 N Y 2d 857; McFall v. Compagnie Maritime Belge, 304 N. Y. 314.)
In Baccale, the City of New York was charged with negligence because of the presence in front of certain premises, at a point where a proposed curb line joined the street, of a drain or outlet for water which ran along the gutters and down a leader from a structure owned by the defendant Birkland. The city asserted a cross complaint against Birkland, charging that this condition was created by him and that the negligence, if any, of the city was only passive. The trial court found that the accident was caused by the sole negligence of both defendants; that while the city had constructive notice of the existence of the dangerous condition which was the proximate cause of the accident, since it existed upon a public street for more than 14 years, it had no actual notice thereof; and judgment over on its cross claim was accordingly granted. The Appellate Division ordered a new trial, so far as the injured plaintiff was concerned, unless she stipulated to reduce the amount of the verdict, in which *723 event it would be affirmed against both defendants and in favor of the city on its cross claim against the property owner. Such stipulation was filed, but the case was nevertheless taken to the Court of Appeals. There, the owner argued in part that he and the city were in pari delicto and that, therefore, no indemnity was possible. The city argued that it was entitled to indemnity because the OAvner created the condition and its own negligence was passive. The Court of Appeals unanimously affirmed the judgment Avithout opinion.
In the Runkel case (supra) there was evidence that the city had actual notice of the dangerous condition of a certain building, the collapse of which caused the injuries for which it was held liable. Its cross complaint was dismissed against the OAvners of the building by the trial court. The Appellate Division of the Second Department, hoAvever, directed judgment over in favor of the city against the owners of the building on the ground that “ it is entitled to recovery over against those whose negligence was the basic cause of the injuries sustained by the plaintiffs-respondents. ” As has been noted, the determination of the Appellate Division was unanimously affirmed without opinion by the Court of Appeals (3 NY 2d 857).
The third-party defendant, the waxer, contends, with great earnestness, that inactivity on the part of one who has a duty to perform constitutes active and not passive negligence, and that since in this case the bank owes an affirmative duty to its customers such as the plaintiff to maintain its premises in a reasonably safe condition, its omission to perform that duty by permitting its floor to be over-waxed and, therefore, dangerous, puts it in a position where it is in pari delicto Avith him and that, therefore, there may be no recovery over. (McFall v. Compagnie Maritime Belge, 304 N. Y. 314, supra; Harrington v. 615 West Corp., 2 N Y 2d 476.)
The McFall case (supra) rather than being an authority in favor of the third-party defendant is an authority against it, for in that case the Court of Appeals seemed to indicate that the rule in cases like those now before the court are really a balancing of equities and that even if the defendant claiming over is guilty of affirmative negligence, the disparity in the degree of negligence may be so great that it is still entitled to recover over. In that case, speaking through Conway, J. (now Chief Judge), the court said: “ The evidence earlier outlined shows that Belgian Line was guilty of a fault of omission whereas Transoceanic, in negligently handling the drums, and Dow, in supplying inadequate drums, were guilty of faults of commission. (Cf. Standard Oil Co. v. Robins Dry Dock & Repair Co., 32 F. *724 2d 182, 184.) While that is not always determinative, since either a fault of omission or one of commission may constitute active negligence, it seems to us that the factual disparity between the delinquency of Transoceanic and Dow and that of Belgian Line is so great here that the jury was justified in concluding that Belgian Line’s fault of omission was only passive negligence.” (P. 330.)
In the same case, the court said: ‘ ‘ The right to indemnity, as distinguished from contribution, is not dependent upon the legislative will. It springs from a contract, express or implied, and full, not partial, reimbursement is sought. Where several tortfeasors are involved an implied contract of indemnity arises in favor of the wrongdoer who has been guilty of passive negligence, if there be such, against the one who has been actively negligent. The actively negligent tort-feasor is considered the primary or principal wrongdoer and is held responsible for his negligent act not only to the person directly injured thereby, but also to any other person indirectly harmed by being cast in damages by operation of law for the wrongful act. Whether negligence is passive or active is, generally speaking, a question of fact for the jury.” (P.328.)
In Harrington (supra) the apparent basis for the denial of the recovery over was that both the landlord and the contractor were guilty of the same kind of negligence, to wit, the failure to warn tenants of the danger. In that case a rope had been placed by the painting contractor to fasten scaffolds, but what he had done was in accordance with “ standard practice and
therefore fault cannot be ascribed to the contractor for having strung the rope over which Mrs. Harrington fell. The negligence which the trial court found against both owner and contractor stems from failure to warn tenants in the building, such as Mrs. Harrington, of the presence of this rope, or from failure to erect some suitable barrier.” (P. 481.)
firm tinning on, the court showed that it was denying recovery over to the defendant owner because both it and the contractor were guilty of the same kind of negligence, to wit, the failure to warn. The court said: * ‘ Bearing in mind that the painting contractor is not liable for having placed this rope, but for having neglected to warn or to protect tenants in the building from falling over it, the case assumes a different shape from the usual situation involving questions of active and passive negligence. Before being rendered liable, plaintiffs’ landlord had to be chargeable with notice of the erection of this guy rope by the contractor, and the contractor (in order to be liable) had to have notice of the clotheslines and of the fact that tenants were *725 accustomed to walk across the roof at this location to reach the clotheslines. If the actionable negligence had consisted in stringing this taut rope at all, the basis might have been laid for indemnification of the owner by the contractor on the theory of active and passive negligence. Then the negligence would have been akin to nuisance, and would have rested primarily upon the shoulders of the contractor as the tortious creator of the dangerous condition. The contracting firm which erected the rope, in that view, might have been considered to be the active wrongdoer, and the owner merely passive. But the wrong did not consist in the act of attaching the rope but in neglect to warn or to guard against injury — with knowledge by the wrongdoers (1) that the rope was there, and (2) that tenants were accustomed to pass that way. Since the building had to be painted and there was no other way to do the painting job except by erecting this rope, negligence cannot be based upon the mere circumstance that it was there. When it comes to breach of the duty to warn the tenants of this pitfall in their way, both owner and contractor were equally and each actively to blame. From the ordinary conduct of their businesses, the contractor knew that the guy rope was there, and the apartment house owner knew of the presence of the clotheslines for the use of its tenants. The Trial Justice found on the evidence of this case that each is chargeable also with notice of what the other necessarily knew from the course of its business. The duty of exercising reasonable care to erect warning signs or barriers was primary in the case of the landlord as well as of the contractor. In both instances it consisted in the omission to take these precautions, and, under these circumstances, the negligence of each is active negligence.” (Pp. 481-482.)
Under the circumstances, the Harrington case must be limited to the factual situation there present and has no application to the facts in the case at bar where the third-party defendant created the dangerous condition, and the defendant is liable to the plaintiffs only because of its constructive notice of that condition and its omission to warn them thereof.
The distinction in such cases is sometimes very finely drawn, and the courts upon occasion have loosely used the words “ passive negligence ” and “ active negligence ” without defining their precise meaning and application to the facts before them. That failure has led Professors John V. Thornton, Associate Professor of Law, New York University School of Law, and Harold F. McNiece, Associate Dean and Professor of Law at St. John’s University School of Law, to say, in the New York University Law Review of December, 1957, which is a 1957 *726 Survey of New York Law: ‘‘ When the judges of the appellate courts disagree so violently in these indemnity cases, a trial judge may well be pardoned if he too guesses wrong now and then. Indeed, in deciding what negligence is ‘ active ’ and what is ‘ passive,’ a trial judge will receive almost as much assistance from tossing a coin as he will from pondering the opinions of the appellate tribunals. ” (P. 1471.) And they pointed out that: “ In another recent indemnity case, Burke v. City of New York, 2 N. Y. 2d 90,138 N. E. 2d 332 (1956), the Court of Appeals, in affirming a judgment of a divided appellate division, broke out in a rash of opinions. Three judges concurred in the Court’s opinion, one concurred in a separate opinion, and three dissented in two separate dissenting opinions.” (P. 1471.)
The court finds that in the case at bar defendant is entitled to recover over against the third-party defendant who created the condition which the jury, by its verdict in plaintiffs’ favor, found'to be dangerous, and which, upon the evidence, was the basic cause of the accident. The defendant is, accordingly, granted judgment over against the third-party defendant for the amount of the judgment to be entered against it in favor of the plaintiffs.
The defendant and the third-party defendant are both granted a 10-day stay of execution and 30 days to make a case.