J. Irwin Shapiro, J.
During the trial of this action it was agreed that the jury be discharged and that the action continue before me as a nonjury cause; that the plaintiff have judgment against both defendants and that the issues raised by the cross complaint of defendant Hertz-U-Drive-It (hereinafter sometimes referred to as the Trailer) against defendant Harrison Hub, Bed and Spring Co. (hereinafter sometimes *884 referred to as the Tractor) be determined by me and that judgment should be directed in accordance with my findings.
By a stipulation submitted to the court thereafter, it was also agreed ‘ ‘ that the issues to be decided by the Court without a jury be extended to and include the question of insurance coverage to the same extent as if same had been raised in the pleadings herein.”
In the days of the horse and buggy, no one apparently was concerned with the nonliability of the owner when he loaned his animal and vehicle to another who caused an accident. This was our common law.
With the advent of the horseless carriage, it was found that our flexible common law would not flex enough to hold the owner of a motor vehicle liable for the acts of one who was driving that automobile with his permission, but not on his business. Said our Court of Appeals in Gochee v. Wagner (257 N. Y. 344, 346-347):
‘ ‘ Prior to the enactment of section 282-e of the Highway Law (1924; Cons. Laws, ch. 25) the law in this jurisdiction was firmly established that the owner of a vehicle was not liable for negligent injury caused in its operation by another unless at the time it was being used on his business. (Rolfe v. Hewett, 227 N. Y. 486.)
“ The owner was not liable for the negligence of a person to whom he had loaned his car, whether a member of his family or a stranger, while the car was being used upon the business or pleasure of the borrower. (Potts v. Pardee, 220 N. Y. 431.)
‘' It was to change this well-established rule that the Legislature enacted section 282-e, now section 59, of the Vehicle and Traffic Law (Cons. Laws, ch. 71), for the purpose of making the owner liable for the negligence of a person legally operating the car with the permission, express or implied, of the owner. Section 59 reads in part: ‘ Every owner of a motor vehicle or motor cycle operated upon a public highway shall be liable and responsible for death or injuries to person or property resulting from negligence in the operation of such motor vehicle or motor cycle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner. ’ ”
This enactment would seem to have solved the problem of the liability of an owner of a “motor vehicle” for its use by anyone operating it with the permission and consent of the owner. That this was not the case soon became evident.
In our complex society with its ever increasing changes, there was soon developed and came into use a hybrid vehicle, known *885 as a tractor-trailer. The tractor, of course, supplies the only motive power that the combined “ vehicle ” has, and the trailer is the receptacle for the contents to be transported.
When the same individual or entity owned both the tractor and the trailer which were involved in an accident, no problem of nonliability could arise for section 59 of the Vehicle and Traffic Law provided for the liability of the owner of a “ motor vehicle ’ ’.
However, when William Hennessy was killed by a tractor-trailer, it developed that they were separately owned. His administratrix sued both the owner of the tractor and the owner of the trailer, but the Court of Appeals concluded that since section 59 of the Vehicle and Traffic Law spoke only of a“ motor vehicle ” and since a trailer, per se, did not have any motive power, it could not be considered a motor vehicle within the framework of that section. His estate, therefore, was denied a recovery against the owner of the trailer. (Hennessy v. Walker, 279 N. Y. 94.)
Thus, just as it had changed the common law to make an owner of a motor vehicle legally responsible for its use “ by any person legally using or operating the same with the permission, express or implied, of such owner ”, so, the Legislature now again moved quickly to correct the situation revealed by Mrs. Hennessy’s loss of her lawsuit against the trailer owner.
Within one year of the Hennessy decision, section 59-a of the Vehicle and Traffic Law was enacted into law. So far as here material, it reads: ‘ ‘ Every owner of an auto truck or auto tractor and every owner of a trailer or semi-trailer attached, if separately owned, shall be jointly liable and responsible for death or injuries to person or property resulting from negligence in operation by any person legally using or operating the same, or either, with the permission, express or implied, of such owners.”
Thus, the rights of injured persons arising from the use of these mammoth tractor-trailers was statutorily safeguarded. No longer could large and financially responsible owners of fleets of trailers hide behind some financially irresponsible tractor-owner. The field of law on this point was seemingly entirely covered.
But the lawmakers apparently did not anticipate that in a lawsuit by an injured plaintiff against the separate owners of a tractor and a trailer, a question would arise of the rights of the tractor and trailer owners between themselves. That brings us to the facts in this case.
*886 The plaintiff was injured and his property damaged by the operation of the tractor-trailer. The tractor is owned by the defendant Harrison; the trailer by the defendant Hertz. The unit, at the time of the accident, was being driven by chauffeur Jones, an employee of Harrison, the owner of the tractor.
Both defendants agree that the plaintiff was free from negligence and perforce section 59-a of the Vehicle and Traffic Law they are both liable to him for his damages in the amount agreed upon. But says the trailer owner, ‘ ‘ I am held liable solely by reason of the provisions of section 59-a; I was passive in this whole affair; the active negligence was that of Jones, the chauffeur who is an employee of the tractor company and, therefore, the latter should be accountable to me on my cross-complaint for any sum I am compelled to pay to the plaintiff.”
The tractor company answers this seemingly plausible contention by pointing out that another part of section 59-a states that “ For the purposes of this section, the auto truck or auto tractor and the trailer or semi-trailer shall be deemed one vehicle and the operator, while acting in the scope of his employment shall be deemed the agent of each and the operator of the combined vehicle.”
That contention overlooks the fact that the operator of the tractor is not the agent of the trailer generally but is deemed the agent of the trailer only “ For the purposes of this section ” i.e., for the purpose of imposing liability for his, the operator’s, negligent acts on the owner of the trailer insofar as third persons are concerned.
Section 59-a defines the obligations of owners of tractors and trailers for the negligent acts of either and makes them “ jointly liable and responsible for death or injuries to person or property resulting from negligence in operation by any person legally using or operating the same, or either, with the permission, express or implied, of such owners.”
That was the purpose of the statute; it was designed to correct the situation made manifest by the Hennessy ease and it should be interpreted in the light of the “ mischief ” it sought to eradicate. (Matter of Sullivan Co., 289 N. Y. 110.) What the “ mischief ” was in this case is made evident by the memorandum supplied to the Governor by his assistant counsel before section 59-a was approved, in which he said (Legislative Bill Jacket Collection) :
“ This bill would amend the Vehicle and Traffic Law to make the owner of a trailer civilly liable for injuries resulting from the negligent operation of a vehicle to which it is attached with the owner’s permission.
*887 “Under present law (Section 59, Vehicle and Traffic Law), the owner of a motor vehicle is liable for injuries caused by the negligent operation of the vehicle if it is being used with his consent. The Court of Appeals has held in a five to two decision that this statute does not apply to the owner of a trailer. In the case before the Court of Appeals, injuries had been caused by the negligent operation of a tractor-trailer. The owner of the tractor was held liable under Section 59, but the owner of the trailer was not even though the trailer was being operated with his consent. The theory of the majority decision was that the case of the trailer did not fall within the language [sic] of Section 59 which imposes liability on the owner of a motor vehicle or motorcycle.
‘'I think this bill should be approved. It is in accord with the spirit of Section 59 of the Vehicle and Traffic Law. The theory of that section is that if the owner of a dangerous vehicle permits its use upon public highways, he should be held to answer for the negligence of the person to whom he lends it. Certainly, a trailer attached to a vehicle becomes as dangerous, if not more dangerous, than an ordinary pleasure car. The same reasons exist for imposing liability on the owner of a trailer, in my opinion, as for imposing it on owners of other types of motor vehicles.
“I recommend approval.”
The trailer in this case is in the same position as a freight car attached to a locomotive engine. Both are propelled in any direction that is taken by the motive power to which they are attached. Certainly, it could not reasonably be contended that the owner of a freight car was guilty of any act of negligence because of the acts of the engineer who operated the engine which was drawing the freight car.
In this case, therefore, though both defendants are jointly liable to the plaintiff because of the provisions of section 59-a, the active tort-feasor is the tractor, and under well-settled principles of law, it should be and is held liable to the trailer — the statutory passive tort-feasor. (Cote v. Autocar Sales & Service Co., 191 Misc. 988; Seiden v. Savings & Loan Assn. of Sunnyside, 10 Misc 2d 720 and cases therein cited.)
The policy of the American Insurance Company, which covers the tractor portion of the tractor-trailer, states that:
“ The insurance with respect to any person or organization other than the named insured does not apply:
“ (a) with respect to an automobile while used with any trailer owned or hired by the insured and not covered by like insurance in the company; or with respect to a trailer while *888 used with any automobile owned or hired by the insured and not covered by like insurance in the company ’ \
The policy of the Royal Insurance Company, which covers the trailer portion of the tractor-trailer, states:
“ Exclusions (c) under Coverages A and C, while the automobile is used for the towing of any trailer owned or hired by the insured and not covered by like insurance in the company; or while any trailer covered by this policy is used with any automobile owned or hired by the insured and not covered by like insurance in the company ’'.
These provisions do not permit a denial of coverage by either insurance company toward their own insureds, nor can they vest any claim in either insurance company against the other, for the quoted provisions of both policies are violative of section 59-a of the Vehicle and Traffic Law which requires that the ‘ ‘ policies of insurance issued to the owner of an auto truck or auto tractor, or issued to the owner of a trailer or semi-trailer, shall contain a provision for indemnity or security against the liability and responsibility provided in this section
Thus, the intent of the Legislature is clear and explicit. A policy or policies of insurance which cover both the tractor and the trailer is required. Therefore, the attempt by each insurance company to exclude itself from liability if the tractor is attached to a trailer, or vice versa, is in express violation of the statute. This makes each exclusion provision illegal for subdivision 1 of section 143 of the Insurance Law states that “ any contract * * * of insurance * * * in violation of any of the provisions of this chapter shall be valid and binding upon the insurer making or issuing the same, but in all respects in which its provisions are in violation of the requirements or prohibitions of this chapter it shall be enforceable as if it conformed with such requirements or prohibitions (Emphasis supplied.)
If these exclusion clauses were held valid, a truly anomalous situation would result. Both insurance carriers would be able to escape liability to their respective assureds (because each covered one unit of the vehicle and not the other), and neither the public nor the insured would have any redress even though a policy as required by the statute was obtained by each assured.
Each insurance company was free to decline to write insurance on a tractor or a trailer, but having written such a policy — and accepted the premium therefor — neither company may be permitted to profit by its own violation of the statute. Construing the policies, with the offending provisions *889 excised therefrom (Bakker v. Ætna Life Ins. Co., 264 N. T. 150), it is determined that neither company has any rights over against the other on the basis of the provisions of its own policy.
That, of course, does not mean that the Royal Insurance Company, as the trailer’s carrier, if it pays the liability of the trailer under this decision, is precluded from recovering in subrogation against the tractor and its insurance carrier.
Accordingly, the clerk is directed to enter judgment against both defendants in the sum of $1,160, the amount fixed as the plaintiff’s damages herein, and the defendant Hertz, the trailer, is permitted a recovery over on its cross complaint against Harrison, the tractor, for any sum it may be compelled to pay hereunder; and it is further determined that neither insurance company has any rights over against the other on the basis of their respective policies.
The foregoing constitutes the decision of this court in accordance with the provisions of section 440 of the Civil Practice Act.