GENEVIEVE HENNESSY, as Administratrix of the Estate of WILLIAM HENNESSY, Deceased, Respondent, *v.* JOHN H. WALKER et al., Defendants, and NIAGARA FREIGHT LINES, INC., Appellant.

DAVID ROBERTSON, by MARIE V. ROBERTSON, His Guardian ad Litem, Respondent, *v.* JOHN H. WALKER et al., Defendants, and NIAGARA FREIGHT LINES, INC., Appellant.

RALPH D. ROBERTSON, Respondent, *v.* JOHN H. WALKER et al., Defendants, and NIAGARA FREIGHT LINES, INC., Appellant.

Argued October 14, 1938; decided November 29, 1938.

*Oscar J. Brown* for appellant. The holding of the trial court that the owner of a semitrailer was responsible for its operation by an independent contractor by reason of section 59 of the Vehicle and Traffic Law (Cons. Laws, ch. 71) was error. (*Fluegel* v. *Coudert*, 244 N. Y. 393; *Psota* v. *Long Island R. R. Co.*, 246 N. Y. 388; *Herrick* v. *Arborio*, 144 Misc. Rep. 15; *Liberty Highway Co.* v. *Callahan*, 157 N. E. Rep. 708; *Kern* v. *Contract Cartage Co.*, 9 N. E. Rep. [2d] 869.)

*Edward W. Barrett* for Genevieve Hennessy, as administratrix, respondent. Appellant was liable as a matter of law for the negligent operation of its semitrailer. (Cons. Laws, ch. 71, § 59; *Cohen* v. *Neustadter*, 247 N. Y. 207; *State* v. *Schwartzmann Service*, 225 Mo. App. 577; *Eddleman* v. *City of Brazil*, 201 Ind. 84; *Pecoraro* v. *Shippers Dispatch, Inc.*, 162 Misc. Rep. 309; *Shuba* v. *Greendonner*, 271 N. Y. 189.)

*Harry F. Whiton* for Ralph D. Robertson et al., respondents. The owner of the semitrailer is liable under section 59 of the Vehicle and Traffic Law. (*Seligman* v.

*Friedlander*, 199 N. Y. 373; *Jackson* v. *Brown & Klein-henz, Inc.*, 273 N. Y. 365.) Statutes in derogation of the common law are not to be so construed as to defeat the evident purpose of the Legislature. (*Riggs* v. *Palmer*, 115 N. Y. 506; *Manhattan Co.* v. *Kaldenberg*, 165 N. Y. 1; *Bell* v. *Mayor*, 105 N. Y. 139; *People* v. *Abeel*, 182 N. Y. 415; *Cohen* v. *Neustadter*, 247 N. Y. 207; *Pecoraro* v. *Shippers Dispatch, Inc.*, 162 Misc. Rep. 309.)

RIPPEY, J. At the time of the accident, a semitrailer owned by appellant, Niagara Freight Lines, Inc., was being hauled by a truck owned by defendant Walker and operated over a public highway by his employee Peck. Through the negligence of Peck, a head-on collision occurred between the truck and a Chevrolet automobile occupied by William Hennessy and David and Ralph Robertson, as a result of which Hennessy was killed and the two Robertsons injured. Judgments in favor of the administratrix of Hennessy and in favor of the two Robertsons for injuries causing the death of Hennessy and for injuries to the others due to the negligence of Peck were entered against Walker, against Peck, and against the Niagara Freight Lines, Inc. The latter appealed to the Appellate Division, where the judgments against it were affirmed. We granted permission to appeal to this court.

It appeared at the trial that the semitrailer, when at rest and unattached to a motor vehicle, had two dolly wheels under the front end and two wheels on the rear. After attachment to the tractor, the dolly wheels were raised and served no purpose in its subsequent operation. The tractor was formerly a Ford truck with four wheels, two on the front and two on the rear. The body had been reconstructed by Walker to make it suitable for use in connection with the hauling of semitrailers. The front end of the semitrailer rested on a fifth wheel on the rear end of the tractor and was attached to the latter by means of a kingpin. The

tractor and semitrailer had a common braking system operated by the driver of the tractor. The semitrailer could not be operated by itself nor was the tractor designed to carry freight. The semitrailer, loaded with appellant's freight, was being towed by the tractor between the Syracuse terminal of appellant and Albany, New York, by direction of appellant and with its knowledge and consent.

There is no agreement or concession by the parties as to the nature of the business relationship between appellant, Walker and Peck. In the statement under rule 234 of the Rules of Civil Practice it is apparently assumed by appellant that Walker was an independent contractor, and such was the assumption of appellant on the argument. The character of the relationship was a sharply contested question of fact which should have been submitted to the jury. The trial judge seemed to consider it of minor importance, for he did not submit it to the jury. We cannot say that Walker was an independent contractor or that he or Peck was an agent of appellant and the rights and liabilities of appellant cannot in this court be predicated upon either of those relationships. The only question left for us to decide is whether the owner of a semitrailer attached to a separately owned tractor is liable for the negligent operation of the tractor under section 59 of the Vehicle and Traffic Law (Cons. Laws, ch. 71) without regard to the legal relationship existing between the owners of the two vehicles or between the owner of the semitrailer and the driver of the truck or the control or direction over the operation of the motor vehicle which the owner of the semitrailer may or may not have exercised. The trial court answered the question and charged, as matter of law, that it was liable. Said the court: " Now, gentlemen, there have been some discussions between the attorneys as to whose responsibility it is for the operation of the truck

and semitrailer. You need not go into that, because the Court has decided that in as much as the truck was owned by Walker and operated by his man, and in as much as the semitrailer was operated by the Niagara Freight Lines, Incorporated, and was so attached to the truck as to make it one vehicle (the trailer could not run alone, it had only two wheels, it had to be hitched on to something else in order to operate at all), it was in my judgment a three-truck vehicle. That is what it amounted to. It makes no difference whether it was hitched on to this truck or put on in such fashion that it could not be taken off. It was occupying the highway, and it was owned by two owners, and under the statute the owners of vehicles on the highway are responsible for their operation. This was a vehicle on the highway owned by these two owners; therefore, if you find in favor of the plaintiffs, your verdict will be against the two owners of the vehicle and against the driver thereof." To the charge an exception was taken. We think the charge necessarily presents reversible error.

Section 59 of the Vehicle and Traffic Law, so far as material, provides: " Every owner of a motor vehicle or motor cycle operated upon a public highway shall be liable and responsible for death or injuries to person or property resulting from negligence in the operation of such motor vehicle or motor cycle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner." It must be noted that the section does not embrace all types of vehicles within its coverage but relates only to motor vehicles and motor-cycles. Except as liability for negligence has been extended by statute, with exceptions not here pertinent, a person is responsible only for his own torts. It must be presumed that the Legislature, in making a radical change in the rule of liability, would make its intent and purpose clear (*Seligman* v. *Friedlander*, 199 N. Y. 373) and that

it went no further than the mischief to be remedied required (*Psota* v. *Long Island R. R. Co.*, 246 N. Y. 388, 393). A motor vehicle and a motorcycle are each equipped with a motor, a power plant integral with the vehicle. Such a vehicle is a potential agent of destruction when operated by the owner or by others. Prior to the statute under consideration and its predecessors, liability of the owner of such a vehicle could be predicated only upon the negligence of the owner or that of his agent when acting within the scope of his employment under established rules of agency (*Van Blaricom* v. *Dodgson*, 220 N. Y. 111) or of that of a servant under the rules applicable to the relation of master and servant (*Potts* v. *Pardee*, 220 N. Y. 431, 435). The intent and purpose of the statute and the change in the law was to extend his liability for the negligence of any one who legally uses or operates the motor vehicle or motorcycle in the business of the owner or otherwise with his permission, express or implied (*Fluegel* v. *Coudert*, 244 N. Y. 393). Trailers and semitrailers are vehicles within the meaning of the Vehicle and Traffic Law (§ 2, subd. 7) but they are not *motor vehicles*. The Legislature having defined and classified a trailer and a semitrailer as separate and distinct vehicles (§ 2, subds. 27 and 28), it is presumed that it would have referred to them by name had it intended to include them within the provisions of section 59. Obviously a trailer, as a separate unit, cannot be " *operated* " upon the highway or otherwise. It has no motive power of its own. It cannot be used or moved except by motive power extraneous to the vehicle itself.

In construing a particular statute, the courts must take into consideration all commands of the Legislature relating to the same subject-matter (*Seligman* v. *Friedlander*, *supra*). Upon examination of the various provisions of the Vehicle and Traffic Law, it is evident that the Legislature intended to and, in fact, did literally separately classify

trailers and semitrailers and treat them differently than motorcycles and motor vehicles for all the purposes of the law. Prior to 1932, the Legislature defined a " trailer " as a " vehicle " for the purposes of the Vehicle and Traffic Law when it said (§ 2, subd. 7) that the term " vehicle " should include " every kind of conveyance, except a baby carriage, a street surface car and a push cart." It excluded a trailer from the term " motor vehicle " because it limited that class to those vehicles " propelled by any power other than muscular power " (subd. 8). A trailer is not " *propelled;* " it is drawn. The distinction between a " trailer " and a " motor vehicle " is made in other sections of the law. Section 11, subdivision 1, before amendment by chapter 338 of the Laws of 1932, pro-vided separately for registration of a " motor vehicle " and for registration of a " vehicle commonly known as a ' trailer,' for the transportation of goods, wares and merchandise, not propelled by its own power, to be drawn on the public highways by a motor vehicle operated thereon." The definition of a trailer was transferred by the amendment above mentioned to subdivision 27 of section 2. Subdivisions 2, 3 and 6 of section 11 have to do exclusively with the registration of and regis-tration fees for motor vehicles, while subdivision 8 of the same section provides solely for registration fees for trailers. Subdivision 4 (as amd. by L. 1933, ch. 285) refers to the carrying of certificates of registration of motor vehicles *or* trailers. Section 12, subdivision 3, as written before 1930, further draws attention to the distinction between a " motor vehicle " and a " trailer " drawn by the motor vehicle by providing that such a combination requires a separate number plate on the " trailer " with the word " trailer " on the plate. By amendments (Laws of 1930, ch. 269, and Laws of 1933, ch. 285) the wording of that subdivi-sion was somewhat changed, but the distinction between the two vehicles remained. Section 14 as it read before 1930, relating to dimensions and weights

of vehicles, refers separately to "motor vehicles" and "trailers" and "semitrailers." Subsequent amendments to section 14, among other things, clarified the distinction. By section 14, subdivision 12 (Laws of 1933, ch. 295, § 2), a distinction is recognized between the motor vehicle and its tow. Required equipment of vehicles relates to "motor vehicles" and "trailers" and other vehicles as separate units (§ 15). Many other examples might be cited, but it is sufficient to say that the distinction between motor vehicles (vehicles *propelled* by power other than muscular and integral with the vehicle) and trailers (vehicles having no power of their own but *drawn* by motor vehicles) was consistently, uniformly and necessarily kept in mind by the Legislature throughout the Vehicle and Traffic Law wherever reference is required for regulation and use of the two vehicles. In 1932, the decision in *Herrick* v. *Arborio* (144 Misc. Rep. 15) was handed down, where it was held that a "trailer" was not a "motor vehicle" within that term as used in section 59 of the Vehicle and Traffic Law, whereupon the Legislature, apparantly, among other things, to make the distinction between the two vehicles more pronounced, provided separate definitions in section 2, subdivisions 27 and 28, for "trailer" and "semitrailer" by saying that a *trailer* "shall include any vehicle not propelled by its own power drawn on the public highways by a motor vehicle operated thereon, except vehicles being towed by a non-rigid support and vehicles designed and primarily used for other purposes and only occasionally drawn by a motor vehicle" (Laws of 1932, ch. 338) and that a *semitrailer* "shall include any trailer which is so designed that when operated the forward end of its body or chassis rests upon the body or chassis of the towing vehicle" (Laws of 1934, ch. 471).

Thus it is clear that the purpose and intent of the Legislature was separately to classify motor vehicles, trailers and other kinds of vehicles and to extend liability by section 59 to an owner of a *motor vehicle* or of

a *motorcycle*, as separate and distinct kinds of vehicles, for negligence of others in their operation. The literal wording of the statute so indicates; reading the Vehicle and Traffic Law as a whole makes such a construction imperative. So read, the mischief to be remedied was cured. The mere fact that a trailer is .hitched to and drawn by a motor vehicle does not change its character as a separate and distinct vehicle or make it a motor vehicle or in part a motor vehicle within the meaning of section 59. No decision to the contrary has been called to our attention. The Court of Appeals in Ohio has construed a similar statute of Michigan in accord with the construction we are placing upon our own (*Liberty Highway Co.* v. *Callahan*, 24 Ohio App. 374). Cases in other jurisdictions, so far as have been found, where motor vehicle laws have been construed, have to do with statutes fixing the maximum weight of motor vehicles (*State of Missouri* v. *Schwartzman Service, Inc.*, 225 Mo. App. 577; *Eddleman* v. *City of Brazil*, 201 Ind. 84; *Leamon* v. *State of Ohio*, 17 Ohio App. 323) or requiring lights thereon as equipment when the highways are used (*Kern* v. *Contract Cartage Co.*, 55 Ohio App. 481; *Western Indemnity Co.* v. *Wasco Land & Stock Co.*, 51 Cal. App. 672). None of these cases had to do with a special statute fixing liability for negligence, such as our section 59.

In each action the judgment should be reversed as to the appellant, Niagara Freight Lines, Inc., and a new trial granted, with costs to the appellant to abide the event.

CRANE, Ch. J. (dissenting). The defendant Niagara Freight Lines, Inc., owned large trucks which it used in the business carried on by it of delivering goods and merchandise for hire. These big, heavy trucks used the highways of the State of New York. They were built and designed for this purpose. The trucks were so constructed that they could be easily attached to a motor and drawn over the highways. Rather than take the

risk of operating these trucks, the owner, the Niagara Freight Lines, Inc., employed one John H. Walker to furnish the motive power, which he did, by attaching the trucks to his motor vehicle and drawing them over the highways. In this fashion the truck owner, although making use of the highways with heavy conveyances, out of which it was making profit, sought to escape all responsibility toward persons or property injured.

These trucks were heavy, cumbersome things as compared with the little motor truck which was drawing them. They have been called trailers or semitrailers, but whatever name we give them, they became a motor vehicle when attached to the power truck. By such construction the vehicle was one.

This case has arisen out of an accident due to the carelessness and negligence of the driver of this contraption while going over the highways of the State; and the Niagara Freight Lines, Inc., seek to escape liability on the ground that it is not in any way forced to obey the traffic law; or, to put it in another form, that the traffic law does not make it responsible as an owner of a motor vehicle. With this I disagree.

The very purpose of the Motor Vehicle Law, as repeatedly stated (*Jackson* v. *Brown & Kleinhenz, Inc.*, 273 N. Y. 365, and *Cohen* v. *Neustadter*, 247 N. Y. 207), is to protect people upon our highways from these rapidly moving trucks and automobiles propelled by power of any kind. The object is safety, and to insure this safety the law has placed responsibility upon the owner of any motor vehicle who permits or authorizes another to draw it or propel it through the public streets and highways. When the truck without power is constructed, built into, or formed with another so as to make one vehicle propelled by gasoline engine or motor, it comes within the intent and purpose of this law, and is a motor vehicle. Section 59 of the Vehicle and Traffic Law reads: " Every owner of a motor vehicle or motor cycle operated upon a public highway shall be liable and responsible for death or

injuries to person or property resulting from negligence in the operation of such motor vehicle or motor cycle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner."

What is a motor vehicle? Article I, section 2, subdivision 8, defines a motor vehicle as follows: " ' Motor vehicle ' shall include all vehicles propelled by any power other than muscular power * * *." To hold otherwise is to furnish an easy method for evading and violating with impunity the purposes and objects of this very salutary law. Corporations like this owner corporation can carry on extensive express business, trucking and carting great vans over our highways, endangering the use thereof by others and escape all responsibility for negligence by employing an impecunious, irresponsible person to hitch his motor which happens to be on wheels to the truck for the purpose of drawing it and propelling it. I am against allowing any such invasion, and am convinced that the Motor Vehicle Law requires no such interpretation.

As long as vans stay in their sheds they are not motor vehicles; when they are attached to or constructed into a motor vehicle and begin to move over the highways, they become motor vehicles, under the Vehicle and Traffic Law, and both owners, whether they own the whole or only a part, are liable in full for all consequences. (See what other States have said: *Leamon* v. *State of Ohio*, 17 Ohio App. 323; *State of Missouri* v. *Schwartzman Service, Inc.*, 225 Mo. App. 577; *Eddleman* v. *City of Brazil*, 201 Ind. 84; Babbitt, Motor Vehicle Law [4th ed.], § 12; 5 Am. Juris., Automobiles, § 256.)

The judgments appealed from should be affirmed, with costs.

LEHMAN, O'BRIEN, HUBBS and FINCH, JJ., concur with RIPPEY, J.; CRANE, Ch. J., dissents in opinion in which LOUGHRAN, J., concurs.

Judgment accordingly.