SEA–LAND SERVICE, INC., demandante y recurrente, *v.* SECRETARIO DE HACIENDA, demandado y recurrido.

*Número:* R-63-287     *Resuelto:* 17 de noviembre de 1964

*Rodríguez Ema & Rodríguez Ramón, Rodolfo Sequeira, y Nicolás Jiménez,* abogados de la recurrente; *J. B. Fernández Badillo, Procurador General,* y *Manuel Tirado Viera, Procurador General Auxiliar,* abogados del recurrido.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Por disposición del inciso (n) del Art. 291 del Código Político, 13 L.P.R.A. sec. 551, estarán exentos de tributación para la imposición de contribución sobre la propiedad "[l]os vehículos de motor sujetos al pago de los derechos de licencias (tablillas) provistos por la Ley de Automóviles y Tránsito, excepto aquellos que tengan en existencia las personas naturales o jurídicas que sean traficantes en vehículos de motor.[1] Para los años 1961–62 y 1962–63, el Art. 9 de la Ley Núm. 279 de 5 de abril de 1946, 9 L.P.R.A. sec. 179,[2] incluía entre los vehículos de motor sujetos al pago de derechos "los remolques y coches de arrastre diseñados para llevar carga sobre su estructura y ser tirados por otro vehículo de motor."[3]

---

[1] Este inciso fue adicionado al Art. 291 por la Ley Núm. 109 de 26 de abril de 1949 (Leyes, pág. 265). La excepción en cuanto a los vehículos que tengan en existencia los traficantes fue incorporada mediante la Ley Núm. 151 de 30 de abril de 1952 (Leyes, pág. 315).

[2] La vigente Ley de Vehículos de Motor y Tránsito, Núm. 141 de 20 de julio de 1960 (Leyes, pág. 425), no alteró las clasificaciones y los derechos que cobra el fisco en relación con los vehículos de motor.

[3] La Ley Núm. 6 de 30 de junio de 1947 (Leyes (4), pág. 25) impuso por primera vez derechos de licencias a los arrastres (*trailers*) estableciéndose un arancel que variaba conforme a la capacidad de carga

A fines del año 1954 se introdujo en Puerto Rico un novedoso sistema de importar mercancía en remolques cerrados sin autoimpulsión que al arribar a la Isla eran desembarcados como una unidad y conducidos por camiones propulsores con la mercancía que contenían al sitio de su destino o al lugar de negocios del consignatario. La recurrente Sea-Land Service, Inc. era una de las empresas que se dedicaban a este negocio de transportación de carga marítima. Para ello se utilizaban unas enormes cajas metálicas, conocidas como *"cargo containers"* y *"cargo vans"* que se depositaban en la cubierta de los barcos. Al llegar a Puerto Rico, estas cajas se izaban y se colocaban al costado del buque sobre unas plataformas de metal o chasis. Una vez realizada esta operación, las plataformas eran arrastradas por camiones propulsores, que no pertenecían a la recurrente, y conducidas a los distintos destinatarios. Realizada la entrega, y descargada la mercancía procedente del exterior, se repetía la misma operación a la inversa.

Para el año 1961–62 el Secretario de Hacienda notificó a la recurrente un recibo de contribución sobre propiedad mueble asecendente a $17,631.93, del cual se satisfizo $583.29, la parte de la contribución con la cual la contribuyente estuvo conforme. Para el siguiente ejercicio fiscal 1962–63 la contribución impuesta fue de $19,505.87 y se pagó $626.55. La diferencia representaba la contribución sobre el valor para fines contributivos de las cajas metálicas que se encontraban en Puerto Rico al día primero de enero de cada año contributivo, y que se estimó en alrededor de $798,000.00.

Acogiéndose al procedimiento provisto en el Art. 2A (3) (a) de la Ley Núm. 235 de 10 de mayo de 1949, 13 L.P.R.A. sec. 282, la contribuyente acudió al Tribunal Superior e impugnó la imposición de la contribución sobre las cajas. La

y el uso a que se dedicaban los mismos. Con pequeños aumentos así permaneció la situación hasta la aprobación de la Ley Núm. 65 de 10 de junio de 1955 (Leyes, pág. 233), a la que nos referiremos posteriormente.

alegación principal que ahora nos preocupa dice que "dichas cajas no están sujetas al pago de contribución sobre la propiedad en Puerto Rico . . . (c) [p]orque los vagones sobre los cuales se intenta imponer la contribución sobre propiedad mueble son y constituyen parte integrante y forman una sola unidad con los 'chasis', designándose dicha unidad compuesta por el vagón y el 'chasis' como 'trailers'. Dichos trailers no están sujetos al pago de contribución sobre propiedad mueble." En su contestación, el demandado adujo que la contribución había sido impuesta sobre los *"cargo-containers"* y éstos "no están integrados al chasis como trailers. Por el contrario alega que los referidos trailers(⁴) no pertenecen a la demandante, siendo los *'cargo containers'* elementos propietarios distintos pertenecientes a la demandante."

La sala de instancia determinó que tanto las plataformas de metal (chasis) como las cajas pertenecen a la contribuyente, pero no así los camiones propulsores y que la caja no está en forma alguna adherida a la plataforma ni al camión, ni forma parte permanente e integrante de éstas. A renglón seguido, haciendo referencia a otra sentencia del mismo tribunal, dijo que "en el caso 60-2907 Pan Atlantic Steamship Co. vs. Secretario de Hacienda resolvimos que las plataformas (trailers) no están sujetas a contribución por pagar derechos de licencia. Pero no puede sostenerse que la caja (*cargo container*) forme parte de la plataforma. Tanto el camión como la plataforma son independientes de la caja." Declaró sin lugar las demandas. Decidimos revisar la sentencia.

---

(⁴) Del requerimiento de admisión de hechos sometido por el Secretario a la demandante se deduce que al referirse a "trailers" en la contestación se intentaba significar los camiones propulsores o de arrastre. Dice el requerimiento Núm. 4: "Que dichos camiones de arrastre pertenecen a otras entidades que no están relacionadas con la demandante y que sí pagan los derechos de licencia como vehículos de motor." La demandante admitió la veracidad de tales hechos.

Como adelantáramos, hasta 1955 los derechos de licencias que prescribía el Art. 9 de la Ley de Automóviles y Tránsito (⁵) eran los siguientes:

"Los tractores y coches de arrastre que usen los caminos públicos de Puerto Rico, por cada tonelada de peso bruto, por año    6.00

" . . .

" . . .

"Por licencia de vehículos pesados de motor, arrastres (trailers) y vehículos comerciales dedicados al servicio privado y de una capacidad de carga de una (1) tonelada o menos, por año    36.00

"Por licencia de vehículos pesados de motor, arrastres (trailers) y vehículos comerciales dedicados al servicio privado y de una capacidad de carga de más de una (1) tonelada pero no excediendo de dos (2) toneladas, por año    60.00

"Por licencia de vehículos pesados de motor, arrastres (trailers) y vehículos comerciales dedicados al servicio privado y de una capacidad de más de dos (2) toneladas pero no excediendo de seis (6), por año    96.00

"Por licencia de vehículos pesados de motor, arrastres (trailers) y vehículos comerciales dedicados al servicio público y de una capacidad de carga de una (1) tonelada o menos, por año    55.00

"Por licencia de vehículos pesados de motor, arrastres (trailers) y vehículos comerciales dedicados al servicio público y de una capacidad de carga de más de una (1) tonelada pero no excediendo de dos (2) toneladas, por año    77.00

"Por licencia de vehículos pesados de motor, arrastres (trailers) y vehículos comerciales dedicados al servicio público y de una capacidad de carga de más de dos (2) toneladas, pero no excediendo de seis (6) toneladas, por año    110.00

---

(⁵) Con excepción del importe de los derechos, idéntica redacción subsistió en el texto de las enmiendas que sufrió dicho Art. 9 por las Leyes Núm. 227 de 15 de mayo de 1948 (Leyes, pág. 805), Núm. 116 de 26 de abril de 1949 (Leyes, pág. 295) y Núm. 33 de 20 de marzo de 1951 (Leyes, pág. 73).

· "Por cada tonelada o fracción de tonelada de capacidad de carga en exceso de seis (6) toneladas, en vehículos pesados de motor, arrastres (trailers) y vehículos comerciales dedicados tanto al servicio público como al servicio privado, por año  36.00

La Ley Núm. 65 de 10 de junio de 1955 (Leyes, pág. 223) impuso un derecho anual nominal de un dólar "por arrastre (trailers) y coches de arrastre diseñados para llevar carga sobre su estructura y ser tirados por otros vehículos de motor", y eliminó toda referencia a las licencias de los arrastres (trailers) dedicados al servicio público o privado, que como hemos visto variaban según *la capacidad de carga.*

¿Se refiere este derecho de un dólar exclusivamente a la plataforma (chasis)? ¿Se incluye a las plataformas cuando llevan adheridas la cajas o *cargo-containers* y forman entonces un remolque (trailer)? La intención legislativa es nuestra mejor orientación en la solución de este problema.

El historial legislativo del P. de la C. 1404, que se convirtió en la Ley Núm. 65 de 1955, *supra*, está íntimamente ligado al P. de la C. 1389, que a su vez se convirtió en la Ley Núm. 59 de la misma fecha (Leyes, pág. 217). El informe de la Comisión de Hacienda de la Cámara de Representantes[6] sobre el P. de la C. 1404 dice en su parte pertinente:

"Este es un proyecto complementario del P. de la C. núm. 1389.

"Por el proyecto se enmienda el Artículo 9 de la Ley de Automóviles y Tránsito, a fin de reducir a $1.00 los derechos anuales en vigor sobre los *remolques* (trailers). Por otro lado se aumentan los derechos anuales en los casos de propulsores (truck tractors) siguiendo una escala ascendente.

"La intención del proyecto es poner la carga de derechos sobre los vehículos de autoimpulsión y facilitar operaciones a base de *remolques* (trailers) entre el *Continente y la Isla* para beneficios de los consumidores o industriales en general."

---

(6)*Diario de Sesiones* (1955), pág. 1443. Un informe similar fue rendido por la Comisión de Hacienda del Senado. *Diario de Sesiones* (1955), pág. 2128.

Y en relación con el P. de la C. 1389, la misma comisión indicó que: (7)

"El proyecto enmienda los Incisos 8 y 8A de la Sección 16 de la Ley de Rentas Internas de Puerto Rico, a saber:

"Núm. 1.—Aumenta a un 17 por ciento el impuesto de un 10 por ciento sobre el "precio de venta en Puerto Rico' fijado por la Ley vigente sobre los propulsores (truck tractors) diseñados para arrastrar remolque (trailers o semi trailers).

"Núm. 2.—Elimina el impuesto sobre los remolques (trailers o semi trailers) que en la actualidad están gravados con un impuesto de 15 por ciento sobre su 'precio de venta en Puerto Rico.'

"Núm. 3.—Se hacen retroactivos al 1ro. de noviembre de 1954 los efectos de dichas enmiendas.

"El propósito del proyecto es facilitar un servicio novedoso y eficiente de transportación de carga, el cual consiste en traer y llevar en barcos *remolques* (*trailers*) cargados de mercancía destinada a comerciantes e industriales de Puerto Rico y el exterior. Estos vehículos permanecen en la Isla por pocos días, el período imprescindiblemente necesario para descargar y cargar los artículos que se importan y exportan bajo este sistema. Para compensar la pérdida de ingresos al eliminar los arbitrios sobre los remolques (trailers) es que se ha aumentado el impuesto sobre los propulsores (truck tractors) que arrastran dichos remolques porque ésos se usan continuamente en Puerto Rico y en virtud de este servicio ofrecerán mayores beneficios a sus dueños.

"La Comisión entiende que esta medida legislativa se traducirá en efectos saludables para nuestra economía y recomienda su aprobación a la mayor brevedad posible."

Si alguna duda hubiera de que el derecho de licencia incluía no sólo la plataforma, sino también la caja que se colocaba sobre la misma, se disipa al considerar las manifestaciones del Representante señor Jorge Font Saldaña, Presidente de la Comisión de Hacienda, en la explicación de los informes y durante el debate que antecedió a la aprobación de las medi-

---

(7)*Diario de Sesiones* (1955), pág. 1437.

das. (⁸) En las ocasiones en que se refirió a los remolques, siempre tuvo en mente que incluía las cajas. Ejemplos de ello son las siguientes expresiones, a la pág. 1439: "Quiero recordarle al compañero que esta situación es afrontada a través de dos proyectos de ley. Uno tiene que ver con los arbitrios, el otro tiene que ver *con los derechos del Departamento de Obras Públicas*," y añadió: "Por ejemplo, los trailers, o sea los remolques introducidos en Puerto Rico durante los años '52, '53 y '54, pagaron arbitrios por una suma de $52,118.21." Y más claramente, "Naturalmente había un sistema de gravar los camiones aquí. O sea el aparato que arrastra el motor y la caja. Hasta que la técnica moderna separó eso. Separó la caja del motor para aumentar la eficiencia, para hacerla más rápida y más fácil. Y entonces, siguió el mismo método anterior fiscal de gravar una caja, prácticamente como si fuera un motor . . ." (Pág. 2065.) El Representante señor Westerband, argumentando en contra de la aprobación del P. de la C. 1404, contrastó el pago de derechos en estas palabras: (⁹) "Y pagarían un dólar anual por los 'trailers', que actualmente están obligados a pagar ochocientos y pico de dólares por cada trailer." Difícilmente puede concebirse que se refiriera únicamente a la plataforma; necesariamente el derecho exigido cubre igualmente la caja o vagón que se deposita sobre la plataforma.

Como se verá de todo este historial el propósito básico que animó a los legisladores fue facilitar este nuevo medio de transportación marítima—de mayor importancia en una isla que depende casi exclusivamente de su comercio con el exterior—para así lograr que el consumidor derivara el beneficio de costos de transportación más reducidos. En cuanto

---

(⁸) En términos generales el debate se limitó principalmente al aspecto de la conveniencia de la legislación propuesta que indudablemente causaría el desplazamiento de obreros del frente portuario frente al beneficio general que recibía la comunidad, y especialmente el consumidor, con el abaratamiento del precio de los alimentos que resultaba de la reducción del costo de su transportación.

(⁹) *Diario de Sesiones* (1955), pág. 2061.

al proyecto germano P. de la C. 1389 se hace referencia expresa a que estos vehículos permanecen en la Isla por pocos días, y ello sólo puede referirse a la caja, pues las plataformas están permanentemente aquí. Y hemos visto que en todas las ocasiones se tuvo en mente el remolque, que incluye tanto la plataforma como la caja o furgón.

■ Las más recientes definiciones de un "trailer"—arrastre o coche de arrastre—corroboran plenamente que sus características esenciales son a) que no sea un vehículo de auto-impulsión, y b) que su propósito sea llevar carga. *Safeguard Insurance Co.* v. *Justice*, 128 S.E.2d 286 (Va. 1962); *Haden* v. *Lee's Mobile Homes, Inc.*, 136 So.2d 912 (Ala. 1961); *Jones* v. *Beiber*, 103 N.W.2d 364 (Iowa 1960). Véase además, *Black's Law Dictionary* (4a. ed.), pág. 1667.

■ Concluimos, por tanto, que el hecho de que la caja metálica sea separable de o no esté permanentemente unida a la plataforma, no tiene importancia a los fines de la determinación de la exención del pago de contribución sobre la propiedad. Como cuestión de hecho forma parte integrante del remolque o coche de arrastre que está sujeto al pago de derechos bajo la Ley de Automóviles y Tránsito. Así se entendió por la Asamblea Legislativa.

*Se revocará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 7 de noviembre de 1963.*

