VÍCTOR GONZÁLEZ TAMAYO, su esposa MARÍA LÓPEZ, NIEVES RODRÍGUEZ GARCÍA y MARÍA TERESA TAMAYO, demandantes y peticionarios, *v.* SEATRAIN LINES OF PUERTO RICO, INC., demandada y recurrida.

*Número:* O-77-280     *Resuelto:* 16 de noviembre de 1977

*G. R. Padró Díaz,* abogado de los peticionarios; *Amancio Arias Cestero, Amancio Arias Guardiola, Antonio Gnocchi Franco* y *Francisco J. Colón Pagán,* abogados de Seatrain Lines of P.R., Inc.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

El 24 de noviembre de 1972, en una curva cerrada de la carretera número 2, un camión remolcador propiedad de Víctor Vicenty Ramírez, y el arrastre que halaba, propiedad de Seatrain Lines of Puerto Rico, Inc., se volcaron sobre un automóvil que esperaba vía franca en una intersección para entrar a la carretera número 2. La causa del accidente fue la negligencia del conductor del camión, William Dalmau Cruz, al conducir la unidad camión-arrastre a velocidad excesiva y sin tomar las debidas precauciones al llegar a la curva. El automóvil resultó en pérdida total y sus ocupantes—tres damas y tres niños—resultaron seriamente lesionados.

Demandados el dueño del camión, su conductor, y Seatrain, en resarcimiento de los daños causados por el accidente, el Tribunal Superior, Sala de Arecibo, falló contra Vicenty Ramírez y Dalmau Cruz. Exoneró a Seatrain bajo el fundamento de que no se adujo prueba demostrativa de negligencia de dicha codemandada. Se negó a aplicar en cuanto a ella la Sec. 13-101 de la Ley de Vehículos y Tránsito, 9 L.P.R.A. sec. 1751, [1] por entender que el arrastre no es un vehículo de motor. Los demandantes han recurrido ante nos para que revisemos dicha determinación. [2]

■ La controversia ante nos se centra en la determinación de si el arrastre unido al camión al ocurrir el accidente debía considerarse como un vehículo de motor. Resolvemos que un vehículo de arrastre, como tal, no es un vehículo de motor, pero una vez está enganchado a un camión remolcador ambos vehículos—el camión y el arrastre—constituyen una sola unidad móvil que debe ser considerada un vehículo de

---

[1] Dicha sección dispone:

"El dueño de cualquier vehículo de motor será responsable de los daños y perjuicios que se causen mediante la operación de dicho vehículo, interviniendo culpa o negligencia, cuando el referido vehículo sea operado o esté bajo el control físico y real de cualquier persona que, con el fin principal de operarlo, o de hacer o permitir que el mismo sea operado por tercera persona, obtenga su posesión mediante la autorización expresa o tácita del dueño. En todo caso se presumirá, salvo prueba en contrario, que la persona que opera o tiene bajo su dominio o control un vehículo de motor, ha obtenido su posesión con la autorización de su dueño, con el fin principal de operarlo, o de hacer o permitir que el mismo sea operado por tercera persona.

"La persona por cuya negligencia haya de responder el dueño de un vehículo de acuerdo con las disposiciones del párrafo anterior vendrá obligada a indemnizar a éste.—Julio 20, 1960, Núm. 141, p. 425, sec. 13-101; enmendada en Mayo 30, 1973, Núm. 58, p. 163, art. 5, ef. 60 días después de Mayo 30, 1973."

[2] Por resolución de 2 de septiembre de 1977 requerimos de Seatrain que mostrara causa por la cual no debamos expedir el auto solicitado y responsabilizarla solidariamente con los otros demandados por los daños y perjuicios causados a los demandantes. Oportunamente presentó alegato en oposición a lo intimado en dicha resolución.

motor a los fines de la citada Sec. 13-101 de la Ley de Vehículos y Tránsito.

■ Para la fecha en que ocurrió el accidente de que aquí nos ocupamos, la Ley de Vehículos y Tránsito definía "vehículo de motor" como "todo vehículo movido por fuerza distinta a la muscular." 9 L.P.R.A. sec. 348. (³) Esta sección fue enmendada por la Ley Núm. 58 de 30 de mayo de 1973 y recodificada como 9 L.P.R.A. sec. 361. Luego de la enmienda, se define "vehículo de motor" como "todo vehículo movido por fuerza propia." Quedó inalterado el resto del texto de la citada Sec. 348. Se define "arrastre", antes y después de la ley enmendatoria de 1973, como "todo vehículo carente de fuerza motriz para su movimiento y diseñado para ser tirado por un vehículo de motor." (⁴)

Ni bajo la definición que imperaba antes de las enmiendas del 1973 ni bajo la actual definición puede considerarse un arrastre como un vehículo de motor. El arrastre no tiene motor. Es, como dice su definición, "diseñado para ser tirado por un vehículo de motor." De ahí que la ley tenga que distinguir entre vehículos de motor y arrastres para ciertos fines

---

(³) Disponía así:
"348. Vehículo de motor
  'Vehículo de motor', significará todo vehículo movido por fuerza distinta a la muscular, excepto los siguientes vehículos o vehículos similares:
  (a) Máquinas de tracción.
  (b) Rodillos de carretera.
  (c) Tractores usados para fines agrícolas exclusivamente.
  (d) Palas mecánicas.
  (e) Equipo para construcción de carreteras.
  (f) Máquinas para la perforación de pozos profundos.
  (g) Vehículos con ruedas de tamaño pequeño usados en fábricas, almacenes y estaciones de ferrocarriles.
  (h) Vehículos que se muevan sobre vías férreas, por mar o por aire.
  (i) Vehículos operados en propiedad privada.—Julio 20, 1960, Núm. 141, p. 425, sec. 1-148."
  Ninguna de las excepciones enumeradas es aquí aplicable.
  (⁴) Véanse 9 L.P.R.A. sec. 310 y 9 L.P.R.A. sec. 313 (Suplemento) que es la codificación luego de las enmiendas introducidas por la Ley Núm. 58 de 30 de mayo de 1973 a la vigente Ley de Vehículos y Tránsito.

dada la obvia inaplicabilidad a arrastres de disposiciones típicamente aplicables a vehículos de motor. Así, se requiere que los vehículos de motor estén equipados con por lo menos dos "faroles de luz incolora en su parte delantera, uno en cada lado, capaces de alumbrar hacia el frente la carretera por un trecho de 500 pies", (5) "un silenciador del motor", (6) "una bocina", (7) "parabrisas de cristal equipado con un aparato para limpiar el parabrisa", (8) y "espejo de retrovisión". (9) De igual manera, la concesión de licencias para transitar por las vías públicas está sujeta al pago de derechos que, en cuanto a vehículos de motor, se hace depender de los caballos de fuerza del motor y del número de pasajeros que puedan transportar, mientras que por los vehículos pesados—camiones y arrastres—los derechos a pagar se determinan conforme a su peso y al peso de la carga que pueden llevar según su diseño. (10)

Es significativo, sin embargo, que cuando la ley impone sanciones penales por la conducción de vehículos de motor no distingue entre éstos y los arrastres. Así, trata al camión y su arrastre como un solo vehículo en lo que respecta a límites de velocidad, (11) conducción imprudente o temeraria, (12) conducción entre carriles (13) y reglas al cruzarse vehículos que transitan en direcciones opuestas, (14) ceder el paso, (15) paradas, (16) movimientos en retroceso, (17) virajes (18) y

---

(5) Sec. 6-202 de la Ley, 9 L.P.R.A. 1272.
(6) Sec. 6-302, 9 L.P.R.A. 1302.
(7) Sec. 6-303, 9 L.P.R.A. 1303.
(8) Sec. 6-304, 9 L.P.R.A. 1304.
(9) Sec. 6-305, 9 L.P.R.A. 1305.
(10) 9 L.P.R.A. sec. 1852.
(11) 9 L.P.R.A. secs. 841 y 842.
(12) 9 L.P.R.A. sec. 871.
(13) 9 L.P.R.A. sec. 895.
(14) 9 L.P.R.A. sec. 896.
(15) 9 L.P.R.A. sec. 921.
(16) 9 L.P.R.A. sec. 951.
(17) 9 L.P.R.A. sec. 954.
(18) 9 L.P.R.A. sec. 981.

detenciones y estacionamiento.([19]) De igual manera, el camión que tira de un arrastre es considerado conjuntamente con éste, sin que se haga distinción, respecto al pago de peaje en las autopistas de peaje.([20]) Es que el arrastre, que separado del remolcador no es un vehículo de motor, cuando se engancha a éste para adquirir la fuerza propulsora que necesita para cumplir el propósito para el cual ha sido diseñado—transportar carga de un lugar a otro—viene a formar con el vehículo que lo remolca una sola unidad que en su totalidad tiene que ser considerada como un vehículo de motor.

La definición dada a "vehículo de motor" por la Ley Núm. 58 del 1973 no altera nuestra conclusión de que el arrastre unido al remolcador constituye con éste un vehículo de motor. La unidad que ambos vehículos vienen a constituir al engancharse uno al otro se mueve por "fuerza distinta a la muscular"—que decía la Sec. 348, citada *supra*—y se mueve por "fuerza propia", como señala la definición dada por la ley del 1973, 9 L.P.R.A. sec. 361. Como se dijo en *Zuber* v. *Clarkson Construction Co.*, 315 S.W.2d 727, 734 (Mo. 1958), el arrastre enganchado al camión remolcador venía a ser un vehículo autoimpulsado cuya fuerza de operación se desarrolla en su parte delantera, que es "la porción propulsora del vehículo."

La recurrida Seatrain cita como autoridad para su argumento de que el arrastre no es un vehículo de motor una vez unido al remolcador, los casos de *Hennessy* v. *Walker*, 17 N.E.2d 782, 279 N.Y. 94 (1938) y *Miller* v. *Berman*, 131 P.2d 18, 55 Cal. App.2d 569 (1943). La jurisprudencia sentada en *Hennessy*, que dio una interpretación restrictiva a la definición de "vehículo de motor" del estatuto de Nueva York, similar al nuestro antes de la enmienda del 1973, fue duramente criticada en opinión disidente en dicho caso que halló

---

([19]) 9 L.P.R.A. secs. 1011, 1013, 1019 y 1021.

([20]) 9 L.P.R.A. secs. 1801 a 1809.

eco en la Asamblea Legislativa de aquel Estado y que al año siguiente—1939—enmendó la ley para colocar al dueño del arrastre en la misma posición de responsabilidad del dueño del remolcador. Véanse *Mondelli* v. *Harrison Hub, Bed and Spring Co.*, 172 N.Y.S.2d 931 (1958) y *Employers Mutual L. Insurance Co. of Wisconsin* v. *Indemnity Insurance Co.*, 234 N.Y.S.2d 839 (1962). *Miller* v. *Berman* no hizo sino ampararse en *Hennessy* a base de la misma interpretación restrictiva. Esa no es la norma aquí imperante. Hemos resuelto que la Sec. 13-101—transcrita supra, escolio 1—ha de ser interpretada liberalmente en favor de la responsabilidad que impone. *Vargas Vargas* v. *Belthor Cáceres Corp.*, 90 D.P.R. 37, 46 (1964). Al mismo efecto, véanse *McGee Quiñones* v. *Palmer*, 91 D.P.R. 464, 470 (1964) y *Cordero Santiago* v. *Lizardi Caballero*, 89 D.P.R. 150, 157–162 (1963).

◼ Aunque no estamos obligados por las decisiones de los tribunales estatales, valga señalar que la mayoría de los que se han expresado sobre planteamientos como el que aquí nos ocupa se pronuncian a favor de considerar al arrastre como un vehículo de motor o parte de un vehículo de motor a los fines de la responsabilidad de su dueño. Véanse *Hancock* v. *Pluth*, 251 N.E.2d 400 (Ill. 1969); *Zuber* v. *Clarkson Construction Co.*, supra; *State* v. *Rowell*, 136 A.2d 349, 351 (Vt. 1957); *Fruehauf Trailer Co.* v. *South Carolina Elec. & Gas Co.*, 75 S.E.2d 688, 690 (S.C. 1953); *Vest* v. *Kramer*, 107 N.E.2d 105, 108 (Ohio 1952); *Prudential Ins. Co. of Great Britain* v. *Associated Emp. Lloyds*, 250 S.W.2d 477, 480 (Tex. 1952); *State* v. *Harper*, 184 S.W.2d 601, 605 (Mo. 1945). En cuanto a la jurisdicción federal, véase *Dennler* v. *Dodge Transfer Corp.*, 201 F.Supp. 431 (D.C. Conn. 1962). Los estatutos aplicables en estos casos son similares al nuestro. El de Texas define "vehículo de motor" igual que lo hace el nuestro en su redacción luego de la enmienda del 1973. Es significativo que en dos de los casos citados—*State* v. *Rowell* y *State* v. *Harper*—se consideró vehículo de motor al arrastre

a los fines de imponer sanciones penales, no empece la norma universal de liberalidad a favor del acusado de delito en la interpretación de estatutos penales.

De particular importancia al considerar al remolcador y al arrastre unido a él como una sola unidad que constituye un vehículo de motor es la naturaleza y diseño de cada parte. El camión remolcador es, por la naturaleza de su construcción, diseñado para operar con un arrastre y, de igual manera, el arrastre es diseñado para operar con un camión que lo remolque. *Fruehauf Trailer Co.*, supra. El remolcador no tendría utilidad económica alguna sin el arrastre, y éste tampoco serviría el propósito para el que es construido sin el camión que lo propulsa. Ambos vehículos son diseñados para complementarse a los fines de su operación, que es transportar carga.

■ La Sec. 13-101 de la Ley de Vehículos y Tránsito se adoptó para dar mayor garantía a las personas que son víctimas de accidentes en nuestras vías públicas de que los daños que sufran les sean reparados. *Cordero Santiago*, supra, pág. 158. La Asamblea Legislativa tomó esta medida ante el auge en los accidentes y las consiguientes pérdidas en vidas y en propiedades y las resultantes lesiones y sufrimientos personales. Fue su propósito "trasladar la carga de los daños a aquella parte que está en mejor posición para soportarla." *McGee Quiñones*, pág. 470. Consideró la Asamblea Legislativa que un vehículo de motor "es un instrumento altamente peligroso" y que "[la] seguridad de los ciudadanos tanto en cuanto a su persona como en cuanto a sus propiedades, requiere que el Estado tome toda clase de medidas no sólo para reducir las causas de accidentes de vehículos de motor, cuya incidencia es alarmante, sino también proveer el derecho a la adecuada compensación a aquellos que sean víctimas de estos accidentes." *Diario de Sesiones de la Cámara*, vol. XIII, págs. 1312–1313 (1960).

Nadie puede negar que si altamente peligroso es todo ve-

hículo de motor, más peligroso aún resulta cuando se trata de un camión remolcador al que se le une un vehículo de arrastre, sobre todo si se trata de uno de esos furgones de gran tamaño que transitan a diario por nuestras vías públicas desde que se introdujeron en Puerto Rico en 1954. *Sea-Land Service, Inc. v. Srio. de Hacienda*, 91 D.P.R. 401 (1964). A mayor el tamaño y peso del arrastre, mayor el peligro del vehículo. Se acentúa ese peligro cuando esas unidades transitan por las carreteras estrechas que trasponen las cordilleras. Es experiencia frecuente de nuestros automovilistas toparse sin previa advertencia, al acercarse a una curva, con uno de esos monstruos rodantes que ocupan la totalidad de la carretera y le obligan a arrinconarse, a veces en el borde de un precipicio, para dar paso a la potente máquina y su enorme arrastre. Es indudable que el arrastre, una vez la unidad desarrolla velocidad, es convertido por la fuerza de inercia, de vehículo impulsado en vehículo impulsador, lo que explica que, como sucedió en este caso, la unidad completa quede fuera de control en una curva cerrada y se vuelque. El espectáculo de grandes arrastres volcados en nuestras carreteras, y los consiguientes "tapones" de tráfico que forman, es experiencia que nadie ignora.

La incidencia de accidentes en nuestras carreteras nos parecía alarmante en 1963 cuando decidimos *Cordero Santiago v. Lizardi Caballero*, y cuando en 1960 se aprobó la Ley Núm. 141 que adoptó la citada Sec. 13-101. Véase la tabla publicada en *Cordero Santiago*, pág. 160. La magnitud del problema hoy día es reflejada por las siguientes estadísticas:

En 1961–62, último año informado en la citada tabla, ocurrieron 31,222 accidentes, que ocasionaron 351 muertes y 14,609 heridos. En el 1976 ocurrieron 85,611 accidentes que causaron 509 muertes y 38,222 heridos. Las pérdidas, estimadas en dinero, por los accidentes ocurridos en 1976, se calculan en $50,900,000.00 por muertes, $149,455,-800.00 por heridos, y $32,250,350.00 por daños a propie-

dades, lo que hace un gran total de $232,606,150.00. En 1961–62 había en Puerto Rico 215,889 vehículos registrados. Al 30 de junio de 1977 hay registrados 830,373 vehículos, en cuya cifra se incluyen 19,264 arrastres y 3,405 remolques. En 1975 los vehículos en Puerto Rico recorrieron a razón de 18,955,000 millas por día. Una proyección al 1980 será de 20.5 millones de millas diarias, ó 7,472,500,000 millas durante dicho año.[21]

Ante este cuadro aterrador para la seguridad pública y vistos los fundamentos que hemos consignado no podemos convenir en que el dueño de un arrastre no sea solidariamente responsable con el dueño y el conductor del camión al que esté unido cuando ocurra un accidente causado por la unidad móvil que ambos vehículos constituyen.[22] No otro puede ser el alcance de la Sec. 13-101 de la Ley de Vehículos y Tránsito.

*Se expedirá el auto solicitado y se dictará sentencia por la que se modifique la dictada por el Tribunal Superior, Sala de Arecibo, para declarar a Seatrain Lines of Puerto Rico, Inc., solidariamente responsable con los otros demandados por los daños y perjuicios causados a los demandantes peticionarios.*

El Juez Asociado Señor Rigau no intervino.

---

[21] Estadísticas ofrecidas por el Departamento de Transportación y Obras Públicas.

[22] La recurrida Seatrain no ha estado desapercibida de la doctrina que aquí reconocemos. Su arrastre era remolcado por el camión propiedad de Vicenty Ramírez en virtud de un contrato preparado por Seatrain, en el idioma inglés, titulado *Trailer Interchange Agreement,* que obra en autos, y en virtud del cual Seatrain es relevada "de toda responsabilidad por daños a las personas y a la propiedad que surjan del uso, operación, mantenimiento y posesión" del arrastre (cláusula 3.5); y se obligó el dueño del camión a mantener en vigor una póliza de responsabilidad pública sobre el arrastre, haciéndose figurar a Seatrain como asegurado adicional, con cubiertas máximas por daños a las personas de $50,000.00 por individuo y $100,000.00 por accidente, y $10,000 por daños a la propiedad.