DOMINGO QUIÑONES MEDINA, demandante y recurrido, *v.* HERTZ RENT A CAR, ETC., ET AL., demandados y recurrentes.

Número: R-77-230     Resuelto: 29 de noviembre de 1977

*Cancio & Cancio,* abogados de los recurrentes; *Jorge Marín Báez,* abogado del recurrido.

PER CURIAM: El 15 de diciembre de 1973 el demandante recurrido Domingo Quiñones Medina alquiló en el Aeropuerto Internacional de San Juan de Hertz Rent A Car el automóvil Ford, modelo Pinto, año 1973, asegurado por la corecurrente Insurance Company of North America contra el riesgo de responsabilidad pública. Este residía en Chicago, Indiana, y vino durante la época navideña a disfrutar dos semanas de vacaciones con sus familiares después de una ausencia de 7 u 8 años. Al día siguiente, aproximadamente a las 10:30 P.M., mientras conducía dicho vehículo en compañía de sus sobrinos Confesor, Fernando y Reinaldo de apellido Rodríguez, le ocurrió un accidente en el barrio Zamas de Jayuya, como resultado del cual falleció Confesor. Del análisis cuidadoso de toda la prueba resulta incontrovertible que el accidente ocurrió en una semi-curva, donde la vía es en forma de bajada o lomo y el pavimento estaba húmedo. Quiñones, quien no estaba familiarizado con el trayecto, discurría de 30 a 35 millas por hora; al tomar la curva y bajar

el lomo en esas condiciones, el carro patinó y se desvió hacia la derecha saliéndose del encintado de línea de la carretera; se le reventó la goma trasera y se volcó por una barranca. Fue arrestado y acusado de homicidio involuntario y una vez visto el caso, absuelto.

Radicó posteriormente demanda en daños contra Hertz y otros bajo la teoría de que la causa del accidente fue la existencia de una goma lisa. La sala sentenciadora dictó sentencia dividiendo en 50% la responsabilidad de las partes. Fundamentó dicho dictamen al concluir que el automóvil alquilado tenía la goma trasera lisa y que el demandante no debió utilizarlo en esas condiciones. Acordamos revisar.

Como excepción a la norma de respetar las apreciaciones de hecho de las salas de instancias, en el caso de autos se impone la revocación. Veamos.

En el "Aviso de Accidente" que suscribió el demandante en 3 de enero de 1974, éste no mencionó condición defectuosa del vehículo, ni menos de que las gomas estuviesen en mal estado. Por el contrario, en el encasillado denominado "Complete Story of Accident by Driver", explicó en sus propias palabras el accidente así: "Yo iba en carro se *barrió en una semi curva* al barrerse se explotó una goma delantera de la parte derecha y el carro se bolcó y al bolcarse, el joven Confesor Rodríguez se salió del auto, perdiendo la vida [*sic*]." Esta explicación quedó corroborada por otra declaración jurada, también contemporánea a los hechos, prestada al Ministerio Fiscal por el único testigo del demandante en la vista del caso, su sobrino Fernando Rodríguez, quien describe la ocurrencia del accidente de la siguiente forma: ". . . como a un minuto de la entrada de mi casa más o menos mientras íbamos por la carretera al llegar a una cuestesita así (se refiere a un lomo) (que alega impide la visibilidad) *a mi tío Domingo se le fue el carro fuera de la carretera hacia el lado derecho entonces se le esbloó una goma* y se fue contra unas piedras que habían más adelante y luego le dio con el lado

derecho al barranco y entonces el carro se fue por el barranco y volteó dos veces hacia la derecha quedando mirando hacia el Bo. Zama nuevamente con mi hermano Confesor [occiso] pinchado con el lado derecho del carro. El carro quedó mirando nuevamente hacia el sitio de donde nosotros habíamos salido. Tuvimos que enderezarlo para poder sacar a mi hermano." (Bastardillas nuestras.)

Esta versión inexplicablemente contrasta con los testimonios prestados por ambos en la vista del caso tendentes a demostrar la alegación de negligencia de que primero fue el "reventón" de la goma, y como resultado el accidente. Ninguno pudo aclarar satisfactoriamente ambas contradicciones. El testigo Fernando al ser contrainterrogado sobre si su tío había ingerido licor antes del accidente, fue evasivo y no contestó categóricamente en la negativa, pues sólo dijo:

(P) "¿Cuando saliste con tu tío esa noche a qué hora salieron ustedes de primera intención; a qué hora te fue a buscar?

(R) El estaba en casa.

(P) ¿A qué hora salieron?

(R) Como a las nueve o diez; de nueve y media a diez.

(P) ¿Y antes de esa hora qué habían hecho ustedes?

(R) Estábamos en casa.

(P) ¿Qué hacía usted?

(R) Allí hablando.

(P) ¿No tomaron licor?

(R) Testigo: *Bueno, yo no.*

(P) Tú no; ¿quién tomó?

(R) Yo estaba trabajando, yo salí tarde de trabajar.

(P) ¿No sabes si tu tío tomó licor?

(R) *No lo ví.*

(P) ¿No lo viste?

(R) (Hace gesto negativo con la cabeza.)

. . . . . . . . .

(P) ¿Cuando el fiscal te preguntó si había tomado licor tu tío antes del accidente tú le contestaste, 'Yo no sé, el se había pasado visitando la familia porque hacía cinco o seis años que no venía de Estados Unidos', ¿es correcto, te pregunto yo ahora?

(R) Testigo: Sí.

(P) ¿Ah?

(R) (Hace gesto afirmativo con la cabeza.)" (Énfasis suplido (T.E. págs. 79–82).)

El carácter conflictivo del testimonio de este testigo quedó demostrado en las siguientes manifestaciones del juzgador en corte abierta:

Juez: "No es, más o menos, la misma cosa; es completamente distinto, lo que usted dijo aquel día. Es completamente distinto y esencial, *es uno de los puntos cruciales en este caso, o sea, la importancia que tiene quizás usted no la ve, pero, es esencial, es crucial.* Ahora, si esa es su explicación yo la anoto, su explicación es que usted cree que lo que dijo en la declaración jurada es más o menos lo mismo que ha dicho hoy, ¿esa es su explicación?

Testigo: Sí.

Juez: Dice que sí. Adelante, compañero." (T.E. pág. 78.) (Bastardillas nuestras.)

Valga apuntar que nunca el demandante le dio explicación alguna a su sobrino de por qué había ocurrido el accidente. Sin embargo, aquél admitió en la silla testifical que el día del accidente se pasó todo el día en casa de su cuñado "echándome el dómino con ellos" (T.E. pág. 34), y que el carro se había barrido primero y luego había explotado la goma. Además, atestó, como hemos visto, que la carretera estaba húmeda; que el accidente fue en una semi-curva; que el carro le patinó, se fue contra la orilla y encontró los piquitos de la brea y ahí se reventó la goma; que iba de 30 a 35 millas por hora.

Ante estas circunstancias, no queda razonablemente satisfecha la conciencia del juzgador en cuanto a dar crédito a la prueba de la parte actora. La alegación central de que el accidente fue causado por una goma lisa—concluida por el tribunal sentenciador—no puede sostenerse.

*Se dictará la correspondiente sentencia.*

El Juez Asociado Señor Irizarry Yunqué emitió voto disi-

dente al cual se unen los Jueces Asociados Señores Martín y Díaz Cruz. El Juez Asociado Señor Rigau no intervino.

—O—

Voto disidente del Juez Asociado Señor Irizarry Yunqué al cual se unen los Jueces Asociados Señores Martín y Díaz Cruz.

San Juan, Puerto Rico, a 29 de noviembre de 1977

Confirmaría la sentencia. Precisamente por ser este un caso de prueba conflictiva y de discrepancias en los testimonios de una misma parte, no estamos en mejor posición que la del juez que vio y oyó declarar a los testigos y debemos por tanto respetar sus conclusiones sobre los hechos.

El hecho de si la goma explotó antes o después del carro patinar a mi juicio carece de importancia. Sí es importante que la goma que explotó estaba lisa, lo que explica que el vehículo se "barriera" en una semicurva sobre un pavimento mojado. Ante este cuadro de hechos, si bien incurrió en falta el demandante al conducir a velocidad de 30 a 35 millas, que si moderada en circunstancias normales resulta excesiva bajo las circunstancias aquí presentes, no puede quedar exenta de responsabilidad Hertz Rent A Car, que tenía el deber de proveer al automóvil gomas en buen estado.

Un vehículo de motor es un artefacto peligroso per se. Las estadísticas sobre los accidentes, las muertes, personas lesionadas, y pérdidas en millones de dólares como consecuencia de su operación en nuestras vías públicas es alarmante. Véase *González* v. *Seatrain Lines of P.R.*, 106 D.P.R. 494 (1977). Hertz explota un negocio lucrativo a base de poner sus automóviles de alquiler a rodar por nuestras carreteras. No debe estar exenta de responsabilidad si no cumple con un deber de mínima consideración para con sus clientes y para la seguridad pública, que es cuidar de que tales automóviles estén en óptima condición.

Confirmaría la sentencia que reconoció la existencia de negligencia del conductor y de Hertz a base de un 50% cada parte.